1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6                                  SAN JOSE DIVISION

7

8    IN RE LINKEDIN ERISA LITIGATION          Case No.  5:20-cv-05704-EJD

9                                             **ORDER GRANTING IN PART AND
     DENYING IN PART MOTION TO
10                                            DISMISS; DENYING MOTION TO
     STAY DISCOVERY**
11

12                                            Re: Dkt. Nos. 44, 46

13

14          Plaintiffs Douglas Bailey, Jason Hayes, and Marianne Robinson filed this putative class

15   action against Defendants LinkedIn Corporation, LinkedIn Corporation's Board of Directors ("the

16   Board"), LinkedIn Corporation's 401(k) Committee ("the Committee"), and Does 1-20 who are

17   members of the Board or Committee or are otherwise fiduciaries of the LinkedIn Corporation

18   401(k) Profit Sharing Plan and Trust ("the Plan"), asserting the following claims: (1) breach of

19   fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

20   U.S.C. 1001 et seq.; (2) failure to monitor fiduciaries and co-fiduciary breaches under ERISA;

21   and, in the alternative, (3) knowing breach of trust.  Am. Compl., Dkt. No. 27.  LinkedIn

22   Corporation, the Board, and the Committee (collectively, "LinkedIn") now move to dismiss all

23   claims under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  LinkedIn's Mot. to Dismiss

24   ("Mot."), Dkt. No. 44.  LinkedIn also moves to stay discovery pending resolution of the motion to

25   dismiss.  Dkt. No. 46.

26          The Court finds the matter suitable for resolution without oral argument.  Civ. L.R. 7-1(b).

27   For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART LinkedIn's

*United States District Court*
*Northern District of California*

1    motion to dismiss with leave to amend and DENIES LinkedIn's motion to stay discovery.

2    **I.    BACKGROUND**

3        LinkedIn is a Delaware corporation headquartered in Mountain View, California.  Am.

4    Compl. ¶ 12.  Plaintiffs are former LinkedIn employees and current and former participants in the

5    Plan.  *Id.* ¶¶ 9-11.  The Plan is a participant-directed 401(k) plan which permits participants to

6    direct the investment of their contributions into various investment options the Plan offered,

7    including various mutual funds, a collective investment trust, and a self-directed brokerage

8    account.  *Id.* ¶ 20.  From August 14, 2014 to the present, Fidelity Management Trust Company

9    ("Fidelity Trust") served as the Plan trustee for Plan assets.  *Id.* ¶¶ 23, 56.

10        Plaintiffs allege that LinkedIn violated its fiduciary duties in multiple ways.  First, they

11    assert that LinkedIn should not have offered as investment options certain target date funds

12    ("TDFs") in the Fidelity Freedom Fund suite from Fidelity Management & Research Company

13    ("Fidelity Research").  *Id.* ¶¶ 25-41.  In particular, Plaintiffs say that LinkedIn acted imprudently

14    by selecting and retaining the actively managed Freedom Funds ("the Active Suite").  *Id.*  Actively

15    managed funds employ a manager who decides which and how many securities to buy and sell,

16    and consequently are riskier and charge higher fees in comparison to passively managed index

17    funds, which merely track market indices.  *Id.* ¶¶ 25-30.  In contrast, Plaintiffs say that, instead of

18    the Active Suite, LinkedIn should have offered the Freedom index funds ("the Index Suite"),

19    which are less risky, less expensive, and better performing.  *Id.* ¶¶ 26-41.

20        In addition to the Freedom Active Suite, Plaintiffs allege that LinkedIn offered another

21    imprudent investment option, the actively managed American Funds AMCAP Fund Class R4 and

22    R6 ("the AMCAP Fund").  *Id.* ¶¶ 42-45.  Plaintiffs say that the AMCAP Fund consistently and

23    significantly underperformed its benchmark, the S&P 500 Index, and that it did not provide

24    returns to justify its expense ratio.  *Id.*  Given that the Plan included an index fund that tracked the

25    AMCAP Fund's stated benchmark, Plaintiffs assert that inclusion of the AMCAP Fund was

26    unnecessary and imprudent.  *Id.* ¶ 45.

27        Finally, Plaintiffs allege that LinkedIn violated its fiduciary duties by offering excessively

28    Case No.: 5:20-cv-05704-EJD
     ORDER GRANTING IN PART MOT. TO DISMISS; DENYING MOT. TO STAY DISC.
     2

United States District Court
Northern District of California

expensive investment options. *Id.* ¶¶ 46-49. They say that LinkedIn failed to ensure that the Plan's investment options charged only reasonable investment management fees, and that the Plan paid management fees that were higher than average compared to other similarly sized 401(k) plans. *Id.* ¶¶ 46-47. Plaintiffs also allege that LinkedIn failed to monitor the Plan's investment options to ensure that the options were in the least expensive available share class with respect to the American Beacon Small Cap Value Investment Fund. *Id.* ¶¶ 48-49.

In sum, Plaintiffs contend that as a result of LinkedIn's actions or inactions, the value of their accounts is less than it otherwise would have been, and that LinkedIn is liable for all losses. This suit followed. On November 4, 2020, Plaintiffs filed the operative Amended Complaint. Dkt. No. 27. On January 4, 2021, LinkedIn filed the motion to dismiss now before the Court. Dkt. No. 44.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are authorized only to exercise jurisdiction pursuant to Article III of the U.S. Constitution and federal laws enacted thereunder." *Am. Fed'n of Teachers v. DeVos*, 484 F. Supp. 3d 731, 741 (N.D. Cal. 2020); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction"). To establish Article III standing, a plaintiff must allege: (1) an injury in fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely (not merely speculative) that injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992).

To show an injury in fact, a plaintiff must allege that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016) (quotation marks and citation omitted). To establish a traceable injury, there must

United States District Court
Northern District of California

be "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (simplified).  Finally, it must be "likely" as opposed to merely "speculative" that the injury will be "redressed by a favorable decision." *Am. Fed'n of Teachers*, 484 F. Supp. 3d at 741 (citing *Lujan*, 504 U.S. at 561).  Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing the existence of Article III standing and, at the pleading stage, "must clearly allege facts demonstrating each element." *Spokeo*, 136 S. Ct. at 1547 (internal quotations omitted); *see also Baker v. United States*, 722 F.2d 517, 518 (9th Cir. 1983) ("The facts to show standing must be clearly apparent on the face of the complaint.").

To contest a plaintiff's showing of subject matter jurisdiction, a defendant may file a Rule 12(b)(1) motion.  Fed. R. Civ. P. 12(b)(1).  A defendant may challenge jurisdiction "facially" by arguing the complaint "on its face" lacks jurisdiction or "factually" by presenting extrinsic evidence demonstrating the lack of jurisdiction on the facts of the case.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.  *Id.* (citing *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).  While a district court may consider evidence outside of the pleadings to resolve a "factual" Rule 12(b)(1) motion, "a [j]urisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Safe Air for Everyone*, 373 F.3d at 1039 n.3 (citing *Sun Valley Gasoline, Inc. v. Ernst*

United States District Court
Northern District of California

1    *Enters., Inc.*, 711 F.2d 138, 140 (9th Cir. 1983)) (internal quotation marks omitted).

2        "In a class action, this standing inquiry focuses on the class representatives." *NEI*

3    *Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir.

4    2019). The named plaintiffs "must allege and show that they personally have been injured, not

5    that injury has been suffered by other, unidentified members of the class to which they belong and

6    which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). Standing for the

7    putative class "is satisfied if at least one named plaintiff meets the requirements." *Bates v. United*

8    *Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). But if none of the named plaintiffs

9    purporting to represent a class can establish standing to sue, the class action cannot proceed. *See*

10   *NEI Contracting*, 926 F.3d at 532 (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

11       **B.    Rule 12(b)(6)**

12       Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with enough

13   specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

14   it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A

15   complaint which falls short of the Rule 8(a) standard may therefore be dismissed if it fails to state

16   a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule

17   12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts

18   to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097,

19   1104 (9th Cir. 2008). When deciding whether to grant a motion to dismiss, the Court must accept

20   as true all "well pleaded factual allegations" and determine whether the allegations "plausibly give

21   rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court must also

22   construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915

23   F.2d 1242, 1245 (9th Cir. 1989). While a complaint need not contain detailed factual allegations,

24   it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

25   plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

26       A court generally may not consider any material beyond the pleadings when ruling on a

27   Rule 12(b)(6) motion. If matters outside the pleadings are considered, "the motion must be treated

28   Case No.: 5:20-cv-05704-EJD
     ORDER GRANTING IN PART MOT. TO DISMISS; DENYING MOT. TO STAY DISC.

as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  However, documents

appended to the complaint, incorporated by reference in the complaint, or which properly are the

subject of judicial notice may be considered along with the complaint when deciding a Rule

12(b)(6) motion.  *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal

Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

Likewise, a court may consider matters that are "capable of accurate and ready determination by

resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank,

N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R.

Evid. 201(b)).

## III.    MOTION TO DISMISS

### A.    Article III Standing

As a threshold matter, LinkedIn contends that the complaint should be dismissed under

Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiffs have not adequately alleged

Article III standing.  Mot. at 18–20; LinkedIn's Reply in Supp. of Mot. to Dismiss ("Reply"), Dkt.

No. 57 at 14–15.  In an apparent facial challenge, LinkedIn argues that Plaintiffs have not alleged

that any of them actually invested in any of the challenged funds and therefore fail to allege

concrete facts demonstrating an injury-in-fact under *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615

(2020).

*Thole* concerned Article III standing for defined-benefit plan participants alleging

mismanagement of the plan through imprudent investment.  140 S. Ct. at 1618.  The Supreme

Court held that the plaintiffs had no "concrete stake" in the case because they had received all

their monthly pension payments and were legally entitled to receive the same monthly payments

for the rest of their lives regardless of the outcome, and thus plaintiffs lacked standing.  *Id.* at

1619–21.  "Of decisive importance" to the Supreme Court was the fact that *Thole* concerned a

defined-*benefit* plan, as opposed to a defined-*contribution* plan where participants' benefits were

"tied to the value of their accounts and can turn on the plan fiduciaries' particular investment

decisions."  *Id.* at 1618; *see also id.* at 1619–20.  *Thole* further held that the plaintiffs could not

Case No.: 5:20-cv-05704-EJD

ORDER GRANTING IN PART MOT. TO DISMISS; DENYING MOT. TO STAY DISC.

United States District Court
Northern District of California

United States District Court
Northern District of California

assert standing as representatives of the plan itself without having suffered a concrete injury in fact, and that the statutory right to sue under ERISA "does not affect the Article III standing analysis." *Id.* at 1620–21.  Since *Thole*, district courts across the country have largely held that ERISA plaintiffs do not have standing to challenge the offering of specific funds that they did not allege that they personally invested in, and that allegations of investment in a specific fund is not a prerequisite for standing to challenge plan-wide mismanagement so long as a plaintiff can plead injury to their own plan account.  *See, e.g.*, *Boley v. Universal Health Servs., Inc.*, 498 F. Supp. 3d 715, 719–25 (E.D. Pa. 2020); *Lange v. Infinity Healthcare Physicians, S.C.*, No. 20-cv-737-jdp, 2021 WL 3022117, at *1–4 (W.D. Wis. July 16, 2021); *McGowan v. Barnabas Health, Inc.*, No. 20-13119 (KM) (ESK), 2021 WL 1399870, at *3–5 (D.N.J. Apr. 13, 2021); *Cates v. Trustees of Columbia Univ. in City of New York*, No. 16 Civ. 6524 (GBD) (SDA), 2021 WL 694417, at *2 (S.D.N.Y. Mar. 15, 2021); *Santiago v. Univ. of Miami*, No. 1:20-cv-21784-GAYLES/LOUIS, 2021 WL 1173164, at *6–8 (S.D. Fla. Mar. 1, 2021).

Here, Plaintiffs have asserted two main theories of liability for breach of fiduciary duties: offering imprudent and underperforming investments such as the Freedom Fund Active Suite and AMCAP Fund, and imprudently offering overly expensive investment options with excessive and unreasonable management fees.  The parties do not dispute that none of the Plaintiffs have alleged that they personally invested in the Freedom Active Suite or the AMCAP Fund—in fact, there is no information in the complaint about any of the Plaintiffs' investments.  Accordingly, to the extent Plaintiffs' claims are based on offering imprudent investment options, Plaintiffs have not demonstrated Article III standing.

To the extent Plaintiffs' claims are based on excessive management fees, Plaintiffs need not plead their individual investment in any particular fund if those management fees were charged to all Plan participants regardless of participants' specific investments.  *See Boley*, 498 F. Supp. 3d at 720 ("The Employee may also satisfy this [standing] requirement by alleging an injury to a plan's assets unrelated to specific funds, if plan participants are all assessed a portion of the injury."); *Lange*, 2021 WL 3022117, at *3 (no standing regarding actively managed funds in

United States District Court
Northern District of California

which plaintiff did not invest and where plaintiff did not allege "that these funds' management fees were spread across all plan participants in any way").  However, Plaintiffs do not point to any allegations in the complaint that so expressly state.  *See* Plfs.' Mem. of Points and Auths. in Opp'n to LinkedIn's Mot. to Dismiss Am. Class Action Compl. ("Opp'n"), Dkt. No. 50, at 23–25.  The complaint says only: "The Plan pays Plan expenses from Plan assets.  Each participant's account is charged with the amount of distributions taken and an allocation of administrative expenses."  Am. Compl. ¶ 20.  First, this allegation does not make clear whether these "administrative expenses" concerns investment management fees paid to a fund manager, recordkeeping expenses paid to the Plan recordkeeper, or some other fees paid to the Plan trustee.  Second, assuming that the "administrative expenses" are the same as investment management fees, this allegation does not explain whether a participant is charged these expenses only for the funds they personally invested in, or whether expenses for all funds are paid for by all Plan participants, regardless of each individual participant's actual investments.  As currently pled, the complaint does not provide facts demonstrating that Plaintiffs have suffered a concrete injury to their accounts that would provide standing to pursue a plan-wide mismanagement theory based on excessive management fees.

Accordingly, the Court dismisses the complaint for lack of standing.

### B.    Failure to State a Claim

The Court now turns to whether Plaintiffs have failed to state a claim under Rule 12(b)(6).

#### 1.    Request for judicial notice

LinkedIn requests the Court take judicial notice of the following documents: (1) disclosures issued to participants in the Plan, dated October 14, 2014, October 13, 2015, October 10, 2016, September 11, 2017, September 10, 2018, and September 9, 2019; (2) investment and share class change notices issued to Plan participants dated November 2015, August 2017, and January 2019; (3) excerpts from the May 30, 2020 Fidelity Freedom Index Institutional Premium Fund prospectus; (4) excerpts from the February 28, 2018 American Beacon Small Cap Value Fund prospectus; and (5) the publicly available American Funds AMCAP R-6 Fund Summary

Case No.: 5:20-cv-05704-EJD
ORDER GRANTING IN PART MOT. TO DISMISS; DENYING MOT. TO STAY DISC.

United States District Court
Northern District of California

from December 9, 2020.  Dkt. No. 45.  Federal Rule of Evidence 201 permits a court to judicially notice an adjudicative fact if it is "'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"  *Khoja*, 899 F.3d at 999.  Accordingly, "[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment," but it may not take judicial notice of disputed facts contained in such public records.  *Id*. (internal quotation marks omitted).

Plaintiffs do not appear to object to LinkedIn's request.  *See* Opp'n at 9 n.4.  Accordingly, the Court grants LinkedIn's request for judicial notice.  *Wehner v. Genentech, Inc.*, No. 20-cv-06894-WHO, 2021 WL 507599, at *3 (N.D. Cal. Feb. 9, 2021) (taking judicial notice of plan-related documents); *Davis v. Salesforce.com, Inc.* ("*Salesforce.com I*"), No. 20-cv-01753-MMC, 2020 WL 5893405, at *1 n.2 (N.D. Cal. Oct. 5, 2020) (taking judicial notice of plan-related documents, prospectuses for funds referenced in the complaint, a third-party research paper referenced in the complaint, and two press releases regarding funds at issue).  However, the Court does not take judicial notice of any disputed facts contained in these documents.

Throughout their opposition brief, Plaintiffs likewise rely on extraneous documents, but they do not appear to request judicial notice of those documents.  *See* Opp'n at 3 & n.3, 6, 8, 9, 12, 13, 14 & n.7, 16 & n.9, 19, 24; Dkt. No. 50-1.  A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion.  If matters outside the pleadings are considered, "the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  The Court therefore does not consider the documents attached to the Declaration of Kolin Tang submitted in support of Plaintiffs' opposition brief.

### 2.    Breach of fiduciary duty

Plaintiffs assert that LinkedIn breached its fiduciary duties of prudence and loyalty by: (1) selecting and retaining the Freedom Active Suite, (2) retaining the AMCAP Fund, (3) offering investment options with excessively expensive management fees, and (4) failing to monitor the Plan's investment options to ensure that they were in the least expensive available share class.  Am. Compl. ¶¶ 41-48.

Case No.: 5:20-cv-05704-EJD
ORDER GRANTING IN PART MOT. TO DISMISS; DENYING MOT. TO STAY DISC.

### a.        Duty of prudence

Under ERISA, a plan fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and must do so "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1).  To evaluate whether a plan fiduciary has breached its fiduciary duty of prudence, courts focus "not only on the merits of the transaction, but also on the thoroughness of the investigation into the merits of the transaction." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996).  "Because the content of the duty of prudence turns on the circumstances . . . prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (internal quotation and citation omitted).  This standard "focus[es] on a fiduciary's conduct in arriving at an investment decision, not on its results, and ask[s] whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *White v. Chevron Corp.* ("*White I*"), No. 16-cv-0793-PJH, 2016 WL 4502808, at *5 (N.D. Cal. Aug. 29, 2016) (quoting *Pension Benefit Guar. Corp. ex rel. St. Vincent v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 716 (2nd Cir. 2012)).

Courts recognize that the omission of factual allegations referring directly to a plan fiduciary's "knowledge, methods, or investigations at the relevant times" is "not fatal to a claim alleging a breach of fiduciary duty" because "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *St. Vincent*, 712 F.3d at 718.  Thus, "[e]ven when the alleged facts do not 'directly address[ ] the process by which the Plan was managed,' a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably 'infer from what is alleged that the process was flawed.'" *Id.* (citation omitted).

"[I]f the complaint relies on circumstantial factual allegations to show a breach of fiduciary duties under ERISA, those allegations must give rise to a 'reasonable inference' that the defendant

committed the alleged misconduct," thus "'permit[ting] the court to infer more than the mere possibility of misconduct.'"  *Id.* at 718 (quoting *Iqbal*, 556 U.S. at 678–79).  Although details about a fiduciary's methods and actual knowledge tend to be "in the sole possession of [that fiduciary]," "ERISA imposes extensive disclosure requirements on plan administrators, thus giving plan beneficiaries (i.e., prospective plaintiffs) the opportunity to find out how the fiduciary invested the plan's assets."  *Id.* at 719–20 (citation omitted).  "Armed with this extensive data about a fiduciary's investment decisions, a prospective plaintiff must show, through reasonable inferences from well-pleaded facts, that the fiduciary's choices did not meet ERISA's requirements."  *Id.* at 720.

With this standard in mind, the Court considers whether Plaintiffs have alleged sufficient facts to give rise to a reasonable inference that LinkedIn engaged in conduct suggesting a breach of fiduciary duty.

### i.    Freedom Active Suite

First, LinkedIn contends that Plaintiffs' comparison of the actively managed Active Suite to the passively managed Index Suite is an improper "apples to oranges" comparison that other courts have repeatedly rejected.  Mot. at 9–12 (citing *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484–85 (8th Cir. 2020); *Divane v. Nw. Univ.*, 953 F.3d 980, 989 (7th Cir. 2020), *cert. granted* 141 S. Ct. 2882 (2021); *Salesforce.com I*, 2020 WL 5893405, at *3; *Kong v. Trader Joe's Co.*, No. 20-05790, 2020 WL 7062395 (C.D. Cal. Nov. 30, 2020)).  In response, Plaintiffs assert that all TDFs are actually inherently actively managed, and that the Index Suite is a "perfect comparator" for the Active Suite because the two share the same investment management firm, management team, and a nearly identical glide path.  Opp'n at 13–15.  Plaintiffs argue that the question of what constitutes a reasonable comparator is a factual question that the Court may not consider on a motion to dismiss.  *Id.* at 13–14.

The parties have submitted multiple statements of recent decisions, including decisions from other district courts across the country concerning the Fidelity Freedom suite.  Dkt. Nos. 52, 58, 59, 62 66, 67, 68, 72, 75, 82, 83, 84, 87, 88.  The Court observes that most of these recent

United States District Court
Northern District of California

decisions have denied motions to dismiss based on similar grounds as LinkedIn's motion, whereas only one has granted the motion. *See, e.g.*, *Smith v. CommonSpirit Health*, No. 20-95-DLB-EBA, 2021 WL 4097052 (E.D. Ky. Sept. 8, 2021) (granting motion to dismiss breach of fiduciary duty claim based on retention of Freedom Active Suite instead of Index Suite); *In re Omnicom ERISA Litig.*, No. 20-cv-4141 (CM), 2021 WL 392487 (S.D.N.Y. Aug. 2, 2021) (denying motion to dismiss breach of fiduciary duty claim based on retention of the Active Suite over the Index Suite); *In re: Prime Healthcare ERISA Litig.*, No. 8:20-cv-01529-JLS-JDE, 2021 WL 3076649 (C.D. Cal. July 16, 2021) (same); *In re Biogen, Inc. ERISA Litig.*, No. 20-cv-11325-DJC, 2021 WL 3116331 (D. Mass. July 22, 2021) (same); *In re Quest Diagnostics Inc. ERISA Litig.*, No. 20-07936-SDW-LDW, 2021 WL 1783274 (D.N.J. May 4, 2021) (same); *Blackmon v. Zachary Hldgs.*, No. 5:20-cv-988-DAE, 2021 WL 2190907 (W.D. Tex. Apr. 22, 2021) (same); *Jones v. Coca-Cola Consol., Inc.*, No. 3:20-cv-00654-FDW-DSC, 2021 WL 1226551 (W.D.N.C. Mar. 31, 2021) (same); *In re MedStar ERISA Litig.*, No. RDB-20-1984, 2021 WL 391701 (D. Md. Feb. 4, 2021) (same). Of particular persuasive value here is the Central District of California's decision in *In re: Prime Healthcare ERISA Litigation*, which concerned substantively identical allegations about the Active and Index Suites as the ones now before the Court. *Compare In re: Prime Healthcare*, 2021 WL 3076649, at *1–2, 4 *with* Am. Compl. ¶¶ 25-41.

Here, Plaintiffs contend that Defendants breached their duty of prudence by continuing to offer the Active Suite instead of the Index Suite. They allege that two of the Active Suite's top three domestic equity funds underperformed their benchmark indices by 2.99% and 3.69% over their lifetimes. Am. Compl. ¶ 31. The Active Suite has a significantly higher expense ratio than the Index Suite, despite underperforming the Index Suite based on three- and five-year annualized returns. *Id.* ¶¶ 35-37, 40-41. Plaintiffs further allege that the Active Suite "underwent a strategy overhaul" in 2013 and 2014 that granted its managers discretion to deviate from the glide path allocations to "time market shifts in order to locate underpriced securities," which Plaintiffs say was an unnecessary risk. *Id.* ¶ 33. After the 2014 changes, a March 2018 Reuters special report described how investors had lost confidence in the Active Suite "because of their history of

1  underperformance, frequent strategy changes, and rising risk." *Id.*  In 2018 alone, the Active Suite

2  experienced an estimated $5.4 billion in net outflows, and investors withdrew nearly $16 billion

3  from the Active Suite between 2014 and 2018. *Id.* ¶ 38.  LinkedIn nevertheless maintained the

4  Active Suite between 2012 and 2018.  *Id.* ¶ 26.  These factual allegations are sufficient to

5  plausibly allege that LinkedIn failed to act with the necessary care, skill, prudence, and diligence.

6  *In re: Prime Healthcare*, 2021 WL 3076649, at *4–5.

7          The Court recognizes that other courts in this District have granted motions to dismiss,

8  holding that passively managed funds generally cannot serve as meaningful benchmarks for

9  actively managed funds because the two types of funds "have different aims, different risks, and

10  different potential rewards that cater to different investors." *Salesforce.com I*, 2020 WL 5893405,

11  at *3 (internal quotation marks omitted); *see also Davis v. Salesforce.com, Inc.* ("*Salesforce.com

12  II*"), No. 20-cv-01753-MMC, 2021 WL 1428259, at *5 (N.D. Cal. Apr. 15, 2021) (finding that

13  passively managed funds cannot serve as a meaningful benchmark for actively managed funds

14  offered by the same investment company); *Wehner*, 2021 WL 507599, at *9–10 (same); *see also

15  Davis*, 960 F.3d at 484–85 (finding claim based on comparison of actively and passively managed

16  funds subject to dismissal; noting, "[c]omparing apples and oranges is not a way to show that one

17  is better or worse than the other"); *White I*, 2016 WL 4502808, at *12 (dismissing breach of

18  prudence allegations premised on "apples-to-oranges" comparisons of "distinct investment

19  vehicles").  The Court is unaware of any Ninth Circuit decision endorsing the blanket rule

20  LinkedIn suggests the Court apply here.  *Wehner* and *Salesforce.com I* acknowledge the

21  possibility that passively managed funds might, in some situations, serve as meaningful

22  benchmarks for actively managed funds.  *See, e.g.*, *Salesforce.com I*, 2020 WL 5893405, at *3

23  ("Passively managed funds . . . *ordinarily* cannot serve as meaningful benchmarks for actively

24  managed funds . . . .") (emphasis added).  Furthermore, those cases concerned complaints that

25  lacked sufficient factual allegations from which it could be inferred that the passively managed

26  funds at issue could serve as meaningful benchmarks.  *Id.* at *4; *Wehner*, 2021 WL 507599, at *8–

27  9, 10.  Plaintiffs' allegations described above, taken as true, are sufficient to plausibly allege that

28  Case No.: 5:20-cv-05704-EJD
ORDER GRANTING IN PART MOT. TO DISMISS; DENYING MOT. TO STAY DISC.

LinkedIn failed to act "'with the care, skill, prudence, and diligence' that a prudent person 'acting in a like capacity and familiar with such matters' would use." *In re: Prime Healthcare*, 2021 WL 3076649, at *4–5 (quoting *Tibble v. Edison Int'l* ("*Tibble II*"), 575 U.S. 523, 528 (2015); 29 U.S.C. § 1104(a)(1)).

The thrust of LinkedIn's arguments concern whether the Index Suite is an appropriate comparator, which courts have held to be "factual questions . . . not properly addressed on a motion to dismiss." *Id.* at *6 (internal quotation marks and citations omitted); *see also In re MedStar*, 2021 WL 391701, at *6 (collecting cases). Here, Plaintiffs have alleged that the Active and Index Suites share the same management firm and nearly identical glide paths, and that as TDFs, both families are inherently actively managed—the difference appears to be the degree to which they are actively managed. *See* Am. Compl. ¶¶ 25, 27 32. These allegations are sufficient at the pleading stage to create the inference that the Index Suite could serve a suitable comparator for the Active Suite. *In re: Prime Healthcare*, 2021 WL 3076649, at *6.

Second, LinkedIn contends that it removed the Active Suite from the Plan in 2019, that Plaintiffs have not pled any facts concerning the performance of the Active Suite funds or the Index Suite during prior to 2018, and that a three- or five-year performance history such as the one Plaintiffs allege in the complaint is an insufficient amount of time to support a plausible claim of prudence. Mot. at 11–12. LinkedIn cites to decisions from other courts in this District holding that three- or five-year performance histories are insufficient to state a claim for breach of prudence. *See, e.g.*, *Wehner*, 2021 WL 507599, at *9 (listing cases); *Salesforce.com I*, 2020 WL 5893405, at *4 (allegations "based on five-year returns are not sufficiently long-term to state a plausible claim of imprudence"). The Court is unaware of—and the parties have not cited to—any Ninth Circuit case law establishing such a bright-line rule of pleading. *Cf. Tibble v. Edison Int'l* ("*Tibble I*"), 729 F.3d 1110, 1135 (9th Cir. 2013) (disapproving of "bright-line approach[es] to prudence"), *vacated on other grounds*, *Tibble II*, 575 U.S. 523 (2015). At any rate, Plaintiffs do not rely on allegations concerning a three- or five-year history alone. While the Court finds Plaintiffs' allegations concerning underperformance data from September 2020 to be of low

Case No.: 5:20-cv-05704-EJD
ORDER GRANTING IN PART MOT. TO DISMISS; DENYING MOT. TO STAY DISC.
14

United States District Court
Northern District of California

1   persuasive value in evaluating a claim concerning funds not at issue after 2019, Plaintiffs have

2   alleged more than mere underperformance during the relevant period.  For example, Plaintiffs

3   have alleged facts concerning the 2013/2014 strategy overhaul that created more risk for investors;

4   that investors have been losing confidence in the Active Suite for years, as indicated by an

5   estimated $5.4 billion in capital outflows in 2018 and approximately $16 billion over the prior

6   four years; and that media reports detailing investors' declining confidence in the Active Suite,

7   such as the 2018 Reuters special report discussing the Active Suite's "history of

8   underperformance, frequent strategy changes and rising risk."  Am. Compl. ¶¶ 33, 38-41.

9       Accordingly, the Court finds that Plaintiffs have adequately stated a claim for breach of

10  prudence based on the inclusion and retention of the Freedom Active Suite.  *In re: Prime*

11  *Healthcare*, 2021 WL 3076649, at *5 & n.6.

12                          **ii.**       **AMCAP Fund**

13      LinkedIn argues that Plaintiffs' allegations concerning the AMCAP Fund are not sufficient

14  to state a claim for the same reasons their allegations concerning the Freedom Active Suite are not

15  sufficient.  Mot. at 12–14.  LinkedIn contends that Plaintiffs' comparison of the actively managed

16  AMCAP Fund to the S&P 500 Index is another apples-to-oranges comparison, and that the five-

17  year return history described in the complaint is insufficient to state a claim.  *Id.*  In response,

18  Plaintiffs assert that the S&P 500 is the AMCAP Fund's own stated benchmark[1], and that the five-

19  year return history reflects rolling performance data that dates back to 2009.  Opp'n at 17–18.

20  LinkedIn does not address the rolling performance data in its reply brief, therefore the Court

21  understands LinkedIn to concede the point.

22      Plaintiffs' sparse allegations concerning the AMCAP Fund criticize (1) its poor

23  performance compared to its index benchmark, and (2) its expense ratio.  Am. Compl. ¶¶ 43-45.

24  With respect to the expense ratio, the complaint says only that the expense ratios were 69 basis

25  _____

26  [1] Paragraph 43 of the Amended Complaint states that the AMCAP Fund's benchmark is the S&P
27  500 Index, but Paragraph 45 appears to contradict that allegation by naming the Fidelity 500 Index
    Fund as the AMCAP Fund's benchmark.

28  Case No.: 5:20-cv-05704-EJD
    ORDER GRANTING IN PART MOT. TO DISMISS; DENYING MOT. TO STAY DISC.

United States District Court
Northern District of California

United States District Court
Northern District of California

points (0.69%) and 34 basis points (0.34%) for the R4 and R6 shares, respectively. *Id.* ¶ 45. There are no other facts that contextualize those expense ratios—in sharp contrast to other allegations elsewhere in the complaint. *Compare id. with id.* ¶ 46. These barebones allegations concerning the AMCAP Fund's expense ratios do not create a plausible inference of excessive expense ratios. Plaintiffs have therefore pled nothing more than the conclusory underperformance of an actively managed fund as compared to a market index benchmark, which is insufficient on its own to state a claim for breach of prudence. *Wehner*, 2021 WL 507599, at *8; *Anderson v. Intel Corp.*, No. 19-cv-04618-LHK, 2021 WL 229235, at *8 (N.D. Cal. Jan. 21, 2021); *see also Davis*, 960 F.3d at 485 n.4 (finding that a market index listed in the ERISA plan's disclosures was not a meaningful benchmark for a breach of fiduciary duty claim because the index "is not a fund, much less an actively managed one"); *Smith*, 2021 WL 4097052, at *9. The Court cannot reasonably infer from these allegations that LinkedIn acted imprudently in selecting and retaining the AMCAP Fund.

Plaintiffs argue that the Court should view all of the allegations in the complaint collectively, relying on *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1077 (N.D. Cal. 2017). Opp'n at 17–18. The portion of *Terraza* on which Plaintiffs rely discusses additional factual allegations beyond a general allegation of failure to offer investment options with the lowest expense ratio. *Terraza*, 241 F. Supp. 3d at 1076–77. The Court does not understand *Terraza* to stand for the proposition that a plaintiff need not comply with their *Twombly/Iqbal* pleading obligations for one theory of imprudence concerning a particular investment option where they successfully state a separate theory of imprudence based on an entirely different investment option.[2] In other words, Plaintiffs may have stated a claim for a breach of prudence based on the

---

[2] In fact, *Terraza* appears to suggest just the opposite. *Id.* at 1079 ("'Under ERISA, the prudence of investment or classes of investments offered by a plan must be judged individually.'" (quoting *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 324 (5th Cir. 2007)). While other courts in this District have denied motions to dismiss based on "numerous acts of wrongdoing . . . viewed collectively," *Salesforce.com II*, 2021 WL 1428259, at *4 (citing cases), here Plaintiffs have only adequately alleged one instance of imprudence concerning the Freedom Active Suite. *See supra* Section III.B.2.a.i.

1    Freedom Active Suite, but that does not free them from the requirement of pleading sufficient

2    facts to state a plausible claim for a breach of prudence based on the AMCAP Fund.

3    　　　Accordingly, the Court dismisses Plaintiffs' breach of prudence claim to the extent it is

4    premised on the inclusion and retention of the AMCAP Fund.

5    　　　　　　　　　　　　**iii.**　　　**Share class**

6    　　　Plaintiffs allege that LinkedIn breached its duty of prudence by failing to ensure that the

7    Plan's options were in the least expensive available share class with respect to the American

8    Beacon Small Cap Value Investment Fund.  Am. Compl. ¶¶ 48-49.  Plaintiffs say that LinkedIn

9    could and should have offered the institutional share class of the American Beacon Small Cap

10   Value Fund instead of the investor share class, which had expense ratios of 0.8% and 1.14%,

11   respectively, in 2018.  *Id.*

12   　　　As LinkedIn notes, "merely alleging that a plan offered retail rather than institutional share

13   classes is insufficient to carry a claim for fiduciary breach."  *White v. Chevron Corp.* ("*White II*"),

14   No. 16-cv-0793-PJH, 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017), *a'ffd* 752 F. App'x

15   453 (9th Cir. 2018); *see also Tibble I*, 729 F.3d at 1135 (rejecting contention that a fiduciary

16   should offer only cheaper institutional class funds because "[t]here are simply too many relevant

17   considerations for a fiduciary, for that type of bright-line approach to prudence to be tenable,"

18   including potential for higher return, lower financial risk, more services offered, or greater

19   management flexibility).  LinkedIn also submitted a Plan Participant Disclosure Notice dated

20   September 10, 2018—of which the Court takes judicial notice, *see supra* Section III.B.1—

21   demonstrating that in 2018, the Plan actually did offer the American Beacon Small Cap Value

22   institutional share class instead of the investor class.  Dkt. No. 45-1, Ex. 5 at 6.

23   　　　In response, Plaintiffs admit that they were unaware that the Plan offered the institutional

24   share class in 2018 but nevertheless argue that the Plan should have offered that share class earlier.

25   Opp'n at 19.  The facts on which Plaintiffs rely in their opposition are absent from the complaint,

26   and the Court does not consider them here.  As to Plaintiffs' contention that "it is utterly irrational

27   to offer anything but the least expensive share class," *id.* at 18, that argument goes squarely

28   Case No.: 5:20-cv-05704-EJD

1    against Ninth Circuit law rejecting such bright-line rules.  *Tibble I*, 729 F.3d at 1135.

2    Finally, Plaintiffs argue that LinkedIn's switch to the institutional share class in 2018 is a

3    "tacit admission" indicative of a breach of prudence.  *Id.* at 19.  But it is equally likely that the

4    2018 switch demonstrates that LinkedIn was, in fact, fulfilling its fiduciary duty to monitor and

5    remove imprudent options from the Plan, and Plaintiffs have therefore "not nudged their claims

6    across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

7    Accordingly, as currently pled, the Court finds that Plaintiffs have not alleged sufficient

8    facts from which a claim for breach of prudence based on a failure to offer the American Beacon

9    Small Cap Value institutional share class instead of the investor share class may be inferred.

### iv.    Management fees

11   In the complaint, Plaintiffs cite to data from a 2020 Brightscope/ICI study showing that in

12   2018, at least 17 out of the Plan's 26 funds were "substantially more expensive" than comparable

13   funds in similarly sized plans, and that the Plan's management expenses were 17% higher than

14   average total plan cost.  Am. Compl. ¶¶ 46-47.  According to the Brightscope/ICI study, the

15   average total plan fees/cost was 0.38% of total assets for plans the size of LinkedIn's, but

16   LinkedIn paid investment management fees of 0.45-0.51% between 2014 and 2018.  *Id.* ¶ 47.

17   LinkedIn argues that it did, in fact, offer multiple low-cost investments of the type

18   Plaintiffs allegedly seek.  Mot. at 16–17.  But "[j]ust as the plaintiff cannot plausibly allege a

19   breach of fiduciary duty by simply pointing to the cost of the challenged investment in isolation,

20   the defendants cannot defeat a claim for breach of fiduciary duty by doing the same thing."

21   *Terraza*, 241 F. Supp. 3d at 1078.

22   LinkedIn further contends that its expense ratios across the various asset types offered

23   during the relevant period ranged from 0.015% to 1.20%, which is lower than the range of fees the

24   Ninth and Seventh Circuits have deemed reasonable as a matter of law.  Mot. at 16 (citing *Divane

25   v. Nw. Univ.*, No. 16-8157, 2018 WL 2388118, at *3 (N.D. Ill. May 25, 2018), *aff'd*, 953 F.3d

26   980; *Tibble I*, 729 F.3d at 1135; *Loomis v. Exelon Corp.*, 658 F.3d 667, 669 (7th Cir. 2011);

27   *Hecker*, *v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009); *White I*, 2016 WL 4502808, at *11).

28   Case No.: 5:20-cv-05704-EJD

United States District Court
Northern District of California

United States District Court
Northern District of California

This argument is unavailing in the face of Supreme Court and Ninth Circuit law rejecting bright-line approaches to evaluating claims of prudence and emphasizing instead fact intensive, "careful, context-sensitive scrutiny of a complaint's allegations." *Fifth Third Bancorp*, 573 U.S. at 425; *see also Tibble I*, 729 F.3d at 1135.

Plaintiffs concede that a fund's expense or the Plan's overall investment fees are not sufficient on their own to state a claim, but they argue that the real point of their allegations is that the Plan's investment lineup should have approximately half of its funds cost above average and the other half cost below average in line with a "normal distribution." Opp'n at 19–20. That particular allegation does not appear in the complaint as currently pled. *See* Am. Compl. ¶¶ 46-47. As Plaintiffs acknowledge, "this circumstantial fact does not have much force" because "ERISA does not require fiduciaries to scour the market to find and offer the cheapest possible funds." Opp'n at 20 (quoting *White II*, 2017 WL 2352137, at *14) (internal quotation marks omitted). The Court therefore examines the specific named investment options at issue in the complaint.

Of the 17 allegedly overly expensive investment options, 13 are the Fidelity Freedom funds for which the Court has already determined Plaintiffs have adequately pled facts concerning an appropriate benchmark and thus stated a claim of imprudence. Am. Compl. ¶ 46; *see supra* Section III.B.2.a.i. Another challenged option is the American Beacon Small Cap Value Fund, the share class imprudence theory of which the Court has already rejected based on insufficient factual allegations. *See supra* Section III.B.2.a.iii. For the remaining 3[3] of the 17 allegedly imprudent options, there are no other facts in the complaint about them beyond their expense ratios. Although Plaintiffs allege that these funds were "substantially more expensive than comparable funds," they do not actually identify any benchmarks, much less plead any facts demonstrating that those benchmarks are appropriately comparable. This is not sufficient to state a claim. *See, e.g.*, *Tobias v. NVIDIA Corp.*, No. 20-CV-06081-LHK, 2021 WL 4148706, at *14 (N.D. Cal. Sept.

---

[3] These are: the T. Rowe Price Equity Income Institution class domestic equity fund, the Fidelity Total Bond, and the Oppenheimer Developing Markets I fund. Am. Compl. ¶ 46.

Case No.: 5:20-cv-05704-EJD
ORDER GRANTING IN PART MOT. TO DISMISS; DENYING MOT. TO STAY DISC.
19

13, 2021) ("Simply labeling funds as 'comparable' is insufficient to establish that those funds are meaningful benchmarks against which to compare the performance of the funds that Plaintiffs challenge."); *Anderson v. Intel Corp.*, No. 19-CV-04618-LHK, 2021 WL 229235, at *8–9 (N.D. Cal. Jan. 21, 2021) ("Without factual allegations to support Plaintiffs' claim that the complaint compares fees incurred by the Intel Funds with a meaningful benchmark, . . . Plaintiffs' allegations regarding excessive fees are insufficient to state a claim for breach of the duty of prudence, even in conjunction with further allegations of poor performance and self-dealing by the Investment Committee.").

LinkedIn also cites to other Northern District of California courts that have rejected similar allegations based on the same Brightscope/ICI study Plaintiffs rely on, because that study lumps together all domestic equity funds—including actively and passively managed funds—regardless of any individual differences. Mot. at 17; Reply at 13 (citing *Salesforce.com I*, 2020 WL 5893405 at *3 & n.9; *Wehner*, 2021 WL 507599, at *2). Plaintiffs do not appear to respond to this point about the impropriety of comparing actively and passively managed funds without additional facts. *See* Plfs.' Sur-reply in Opp'n to Defs.' Mot. to Dismiss, Dkt. No. 61-2, at 2.

Accordingly, the Court finds that Plaintiffs have adequately pled breach of prudence based on excessive management fees as to the Freedom Fidelity Active Suite only.

In sum, the Court denies LinkedIn's motion to dismiss the claim for breach of prudence with respect to the Freedom Active Suite. It grants the motion to the extent the breach of prudence claim is predicated on the AMCAP fund's alleged underperformance, the American Beacon Small Cap Value share class, and excessive management fees.

### b.   Duty of loyalty

ERISA's duty of loyalty requires a fiduciary to act "solely in the interest" of the Plan's participants and for the "exclusive purpose" of providing benefits and defraying reasonable plan administration expenses. 29 U.S.C. § 1104(a)(1)(A). To state a claim for breach of the duty of loyalty, the complaint must allege facts from which it plausibly can be inferred that the Plan's fiduciaries subjectively intended to benefit themselves or a third party at the expense of the Plan's

Case No.: 5:20-cv-05704-EJD
ORDER GRANTING IN PART MOT. TO DISMISS; DENYING MOT. TO STAY DISC.

United States District Court
Northern District of California

1    participants.  *Wehner*, 2021 WL 507599, at *10.

2           To the extent Plaintiffs' breach of loyalty claim is based on their breach of prudence claim,

3    Plaintiffs have stated a breach of loyalty claim for the reasons it has stated a breach of prudence

4    claim as explained above.  *See supra* Section III.B.2.a.  However, to the extent Plaintiffs' breach

5    of loyalty claim is based on a theory that LinkedIn sought to enrich Fidelity Research at the

6    expense of Plan participants, Plaintiffs have not pled adequate facts from which the Court may

7    infer such a theory.

8           In their opposition, Plaintiffs assert that "the circumstantial facts alleged in the Complaint

9    also support a disloyalty claim because the Plan's service provider, Fidelity, is directly affiliated

10   with the Active Suite and other investment options, so the retention of those funds despite their

11   issues can be plausibly traced to disloyal conduct."  Opp'n at 22 (citing Am. Compl. ¶¶ 23, 26,

12   37).  There are multiple problems with this argument.  First, there are no facts in the complaint

13   that explain how the Plan trustee, Fidelity Trust, and the provider of the Freedom Active Suite,

14   Fidelity Research, are connected, such that the former benefits from management fees paid to the

15   latter.  Plaintiffs thus appear to conflate the two entities.  Second, assuming that Fidelity Trust

16   benefits from management fees paid to Fidelity Research, there are no facts in the complaint that

17   would suggest that LinkedIn acted with an eye toward these Fidelity entities' interests instead of

18   Plan participants' interests, aside from the fact that the Plan included the Freedom Active Suite

19   among other investment options.  Although the complaint explains how Fidelity Research benefits

20   from retention of the Active Suite, it does not provide facts from which it may be inferred that

21   LinkedIn selected funds or charged fees to benefit themselves or Fidelity Research.

22          Accordingly, the Court finds that Plaintiffs have adequately pled a claim for breaches of

23   the duties of prudence and loyalty based on the Freedom Fidelity Active Suite allegations only.

24                 **3.     Failure to monitor fiduciaries and co-fiduciary breaches; knowing
                            breach of trust**

25          The parties do not dispute that Plaintiffs' second and third claims for failure to monitor

26   fiduciaries and co-fiduciary breaches and knowing breach of trust are predicated on their first

claim for breach of fiduciary duty.  Because the Court has determined that Plaintiffs have stated a claim for breach of fiduciary duty, dismissal of Plaintiffs' other derivative claims would not be appropriate.  *See, e.g.*, *Terraza*, 241 F. Supp. 3d at 1084 (declining to dismiss claim for derivative knowing breach of trust claim where plaintiff stated a claim for breach of fiduciary duty).

### C.      Leave to Amend

In the event that a motion to dismiss is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1127 (internal citations omitted).  Because the Court cannot say that the defects described above cannot possibly be cured by the allegation of other facts, it grants Plaintiffs leave to amend to add facts that would establish standing.  Plaintiffs may also amend to add facts—to the extent they can—that would support their theories of a breach of the duty of prudence based on the AMCAP Fund's underperformance, the American Beacon Small Cap Value share class, and excessive management fees, as well as a breach of the duty of loyalty based on recordkeeping fees paid to Fidelity entities.  Plaintiffs should ensure that their second amended complaint complies with Civil Local Rule 3-4(c)(2)(B).

## IV.      MOTION TO STAY DISCOVERY

LinkedIn seeks a stay of discovery pending the Court's ruling on its motion to dismiss.  Dkt. No. 46.  The Court has now ruled on LinkedIn's motion and therefore DENIES as moot the motion for a stay.

## V.      CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART LinkedIn's motion to dismiss, with leave to amend the deficiencies described above.  Plaintiffs shall file their second amended class complaint by **December 16, 2021**.  LinkedIn's motion to stay discovery is DENIED.

///

///

Case No.: 5:20-cv-05704-EJD
ORDER GRANTING IN PART MOT. TO DISMISS; DENYING MOT. TO STAY DISC.

1      **IT IS SO ORDERED.**

2   Dated: November 16, 2021

3

4                                                                    _____

5                                                                    EDWARD J. DAVILA
                                                                     United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Case No.: 5:20-cv-05704-EJD
     ORDER GRANTING IN PART MOT. TO DISMISS; DENYING MOT. TO STAY DISC.
                                        23