1

2

3

4                            UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6                                    SAN JOSE DIVISION

7

8                                                    Case No.   5:20-cv-05704-EJD

9     IN RE LINKEDIN ERISA LITIGATION              **ORDER GRANTING MOTION FOR
                                                   FINAL APPROVAL OF CLASS
10                                                 ACTION SETTLEMENT; GRANTING
                                                   IN PART REQUEST FOR
11                                                 ATTORNEYS' FEES, COSTS, AND
                                                   SERVICE AWARDS**
12
                                                   Re: ECF No. 148
13

14          Plaintiffs Douglas G. Bailey, Jason J. Hayes, and Marianne Robinson (collectively,

15   "Plaintiffs") filed this putative class action individually and as participants of the LinkedIn

16   Corporation 401(k) Profit Sharing Plan and Trust ("the Plan") against Defendants LinkedIn

17   Corporation ("LinkedIn"), LinkedIn Corporation's Board of Directors ("the Board"), and LinkedIn

18   Corporation's 401(k) Committee ("the Committee") asserting breach of their fiduciary duties under

19   the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and related

20   breaches of applicable law beginning on or after August 14, 2014 until July 1, 2020 ("the Class

21   Period").  Second Am. Compl. ("SAC"), ECF No. 99.

22          The Court previously granted Plaintiffs' motion for preliminary approval of the Class Action

23   Settlement on July 13, 2023.  Order Granting Mot. for prelim. Approval of Class Action Settlement

24   ("Prelim. Approval Order"), ECF No. 147.  As directed by the Court's Preliminary Approval Order,

25   on October 2, 2023, Plaintiffs filed their unopposed motion for final settlement approval and for

26   attorneys' fees, costs, and service awards.  Pls.' Notice of And Unopposed Mot. for Final Approval

27   of Class Action Settlement Awards of Att'ys' Fees, Expenses, and Class Contribution Awards;

28

1    Mem. of P. & A. ISO ("Mot."), ECF No. 148.  The Court heard arguments from the parties on

2    December 13, 2023.  No objectors appeared.

3            Having considered the motion briefing, the terms of the Settlement Agreement, the

4    arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the motion for

5    final approval and **GRANTS IN PART** the request for attorneys' fees, costs, and service awards.

6    The Court finds the settlement fair, adequate, and reasonable.  The provisional appointments of the

7    class representatives and class counsel are confirmed.  The Court **ORDERS** that class counsel shall

8    be paid $2,250,000 in attorneys' fees and $119,386.02 in litigation costs, and Named Plaintiffs

9    Bailey, Hayes, and Robinson shall each be paid a $6,500 service award.

**I.      BACKGROUND**

    **A.      Procedural History**

12           Plaintiffs—former employees of LinkedIn—filed the putative class action complaint on

13   August 14, 2020 against Defendants initially alleging two causes of action for breaches of fiduciary

14   duties of loyalty and prudence and for failure to adequately monitor other fiduciaries from on or after

15   August 14, 2014 until July 1, 2020 ("the Class Period").  *See generally* Compl., ECF No. 1.  The

16   Plan at issue is a participant-directed 401(k) plan which permits participants to direct the investment

17   of their contributions into various investment options the Plan offered, including various mutual

18   funds, a collective investment trust, and a self-directed brokerage account.  *Id.* ¶ 20; SAC ¶ 19.

19   From August 14, 2014 to the present, Fidelity Management Trust Company ("Fidelity Trust") served

20   as the Plan trustee for Plan assets.  Compl. ¶¶ 23, 56; SAC ¶ 22.

21           In the initial complaint, Plaintiffs alleged that LinkedIn violated its fiduciary duties by: (1)

22   offering as investment options certain target date funds in the Fidelity Freedom Fund suite from

23   Fidelity Management & Research Company, *id.* ¶¶ 25–41, and acting imprudently by selecting and

24   retaining the actively managed Freedom Funds ("the Active Suite"), which are riskier and charge

25   higher fees in comparison to passively managed index funds, *id.*; (2) by offering the actively

26   managed American Funds AMCAP Fund Class R4 and R6 ("the AMCAP Fund"), which

United States District Court
Northern District of California

United States District Court
Northern District of California

1    significantly underperformed its benchmark, the S&P 500 Index, and did not provide returns to

2    justify its expense ratio such that the inclusion of the AMCAP Fund was imprudent, *id.* ¶¶ 42–45;

3    and (3) by failing to ensure that the Plan's investment options charged only reasonable investment

4    management fees; instead, the Plan paid management fees that were higher than average compared

5    to other similarly sized 401(k) plans, *id.* ¶¶ 46–49.

6         Defendants moved to dismiss the complaint, asserting that Plaintiffs had not adequately

7    alleged Article III standing and for failure to state a claim.  ECF No. 44.  The Court granted in part

8    and denied in part Defendants' motion, finding that: (1) Plaintiffs lacked standing because they

9    failed to plead facts demonstrating that Plaintiffs' suffered a concrete injury—*i.e.*, that  Bailey,

10   Hayes, and Robinson personally invested in the Freedom Active Suite or the AMCAP Fund; and (2)

11   dismissed Plaintiffs' breach of prudence claim to the extent it is premised on the inclusion and

12   retention of the AMCAP Fund but that Plaintiffs adequately pled a claim for breaches of the duties

13   of prudence and loyalty based on the Freedom Fidelity Active Suite allegations.  ECF No. 96 ("MTD

14   Order").  The Court granted leave to amend, and shortly thereafter Plaintiffs filed the operative

15   complaint for: (1) breach of their fiduciary duties under the Employee Retirement Income Security

16   Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, (2) failure to monitor fiduciaries and co-fiduciary

17   breaches under ERISA; and, in the alternative, (3) knowing breach of trust.  *See generally* SAC.  In

18   the SAC, Plaintiffs added specific allegations that Bailey, Hayes, and Robinson maintained an

19   investment through the Plan in the Fidelity Freedom 2010 Fund, the 2050 Fund, and the 2030 Fund,

20   respectively, during the Class Period.  SAC ¶¶ 9–11.  Plaintiffs also removed allegations regarding

21   the AMCAP Fund.  *See* ECF No. 99-1.

22        Defendants moved to dismiss the SAC and a hearing was set for June 9, 2022.  ECF No. 107.

23   Before the hearing, Plaintiffs moved to certify the class, which was scheduled to be heard August 11,

24   2022.  ECF No. 121.  On May 27, 2022, the Court took the motion to dismiss under submission.

25   However, the Court never ruled on either motion; the following month, the Parties moved to stay the

26   proceedings pending mediation, which the Court granted.  ECF Nos. 124, 125.  On September 23,

27

28

1   2022, the parties engaged in mediation with the assistance of an experienced mediator Robert A.

2   Meyer, Esquire of JAMS.  The Parties reached an agreement in principle to resolve the action on

3   October 12, 2022, prior to class certification.

4          The "Settlement Class" is defined as:

5              All participants and beneficiaries of the Plan, at any time during the
               Class Period (August 14, 2014, through July 1, 2020), including any
6              beneficiary of a deceased person who was a participant in the Plan at
               any time during the Class Period, and any Alternate Payees, in the
7              case of a person subject to a Qualified Domestic Relations Order
               ("QDRO") who was a participant in the Plan at any time during the
8              Class Period. The Class shall exclude all Defendants, including the
               individual members of the Board of Directors of LinkedIn
9              Corporation, and the LinkedIn Corporation 401(k) Committee, and
               their beneficiaries, during the Class Period.

10  Mot. 2; *see* Decl. of Kolin C. Tang ISO Pls.' Unopposed Mot. for Prelim. Approval of Class

11  Action Settlement and Approval of Class Notice ("Tang Decl."), ECF No. 139-2, Ex. 1

12  ("Settlement Agreement") § 1.49.  In its Preliminary Approval Order, the Court conditionally

13  certified the Settlement Class and provisionally appointed Bailey, Hayes, and Robinson as Class

14  Representatives for the Settlement Class, Strategic Claims Services ("SCS") as the Settlement

15  Administrator, and Miller Shah LLP ("Miller Shah") and Capozzi Adler, P.C. ("Capozzi Adler ")

16  as Class Counsel for the Settlement Class.  Prelim. Approval Order at 3, 7.

17          **B.      Terms of the Settlement Agreement**

18          Under the terms of the Settlement Agreement, Defendants will pay a gross settlement amount

19  of $6,750,000 into a common, interest-bearing Qualified Settlement Fund to be allocated on a *pro*

20  *rata* basis to Current Participants, Former Participants, Beneficiaries, and Alternate Payees of the

21  Plan pursuant to the Plan of Allocation, without admitting liability.[1]  Settlement Agreement §§ 1.27,

22  4.5, 5.3, 10.1–10.2; Tang Decl., Ex. B ("Plan of Allocation").  This amount includes attorneys' fees

23  and costs, the cost of class notice, the cost of settlement administration, the cost of the Independent

24

25

26  ───────────────────────

27  [1] Capitalized terms not otherwise defined in this Order are defined in the Settlement Agreement.
    Case No.: 5:20-cv-05704-EJD

28  ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
    GRANTING IN PART REQUEST FOR ATT'YS' FEES, COSTS, & SERV. AWARDS
                                         4

Fiduciary subject to a $25,000 cap, taxes due on the fund, and the class representatives' case contribution awards.  Settlement Agreement §§ 1.27, 1.4, 4.5, 5.1.1–5.1.4, 6.1, 8.1.

### 1. Attorneys' Fees, Costs, and Case Contribution Awards

Under the Settlement Agreement, the Parties agreed that Class Counsel will seek to recover *no more than* one-third of the gross settlement amount in attorneys' fees and case contribution awards not to exceed $12,500 per Class Representative as an incentive award in exchange for a general release of all claims against Defendants.  Settlement Agreement § 6.1.  The Settlement Agreement does not limit the amount of litigation costs Class Counsel may seek to recover.

### 2. Class Relief

The Settlement Agreement solely provides monetary relief via a non-reversionary common fund; it does not provide injunctive relief.  Nor is there a *cy pres* recipient.  After the payments have been issued to the Class members, any amount remaining in the Settlement Fund from uncashed checks after 180 days will be distributed back to the Settlement Fund to be utilized for the benefit of the Plan.  *See* Plan of Allocation.

### 3. Independent Fiduciary

Section 11 of the Settlement Agreement provides that, prior to the Final Fairness Hearing, an Independent Fiduciary must approve an authorize the settlement.  Settlement Agreement § 11.4.  "If the Independent Fiduciary disapproves or otherwise does not authorize the Settlement or refuses to execute the release on behalf of the LinkedIn Plan, then the Settling Parties may mutually agree to modify the terms of this Settlement Agreement as necessary to facilitate approval by the Independent Fiduciary."  *Id.*

### C. Class Notice and Claims Administration

The Settlement Agreement is being administered by SCS, which has administered more than 525 class actions since its inception in 1999.  Decl. of Cornelia Vieira Concerning the Mailing of Settlement Notice and Former Participant Claim Form ("Vieira Decl.") ¶ 1, ECF No. 148-2.  Following the Court's preliminary approval and conditional certification of the settlement, the Class

United States District Court
Northern District of California

1    Administer received 17,353 entries identified as Class Members with a positive balance in the Plan

2    during the Class Period, or as Beneficiaries, or Alternate Payees from Defendants.  *Id.* ¶ 4.

3         SCS disseminated the Settlement Notice via electronic and/or first-class mail to Class

4    Members with an active account and the Former Participant Claim Form to each Class Member

5    without an active account: a total of 15,727 Class Members for whom a valid email address existed

6    received notice via email and the remaining 1,659 Class Members were sent notice via first-class

7    mail.  Suppl. Decl. of Cornelia Vieira Concerning the Mailing of the Settlement Notice and Former

8    Participant Claim Form ("Vieira Supp. Decl.") ¶ 3, ECF No. 151-2.

9         Specifically, of the 17,353 entries, SCS identified 12,676 as active accounts and 4,677 as

10   non-active accounts.  *Id.*  Former Participants, Beneficiaries, and Alternate Payees who no longer

11   have active accounts must submit a Former Participant Claim Form by November 10, 2023 to be

12   eligible to receive Settlement Funds.  Mot. 3.  Class Members with active accounts received only the

13   notice, since they are currently participants in the Plan and therefore not required to submit a claim

14   form.  Vieira Supp. Decl. ¶ 3.  With respect to these Class Members with active accounts, 11,385

15   received email notice and 1,291 received notice via mail.  Vieira Decl. ¶ 4.  With respect to Class

16   Members who do not have active accounts, 4,342 received notice and the claim form via email and

17   the remaining 335 non-active individuals received the notice and claim form via first-class mail.  *Id.*

18   A total of 17,357 active and non-active class members received notice by August 28, 2023.  Vieira

19   Supp. Decl. ¶ 3.

20        Of the 4,677 non-active Class Members, 54 emailed and/or mailed notice and claim forms

21   were returned as undeliverable.  *Id.* ¶ 4.  SCS was able to procure an updated mailing address and

22   mail or re-mail notices and claim forms to 40 of these individuals.  *Id.* of the active Class Members,

23   44 of the emailed and/or mailed notices were returned as undeliverable.  *Id.* ¶ 5.  SCS was able to

24   procure an updated mailing address and mail or re-mail notices to 34 of these individuals.  *Id.*

25        SCS also established a settlement website at www.strategicclaims.net/LinkedIn401K, which

26   contains the current status of the case and important dates, as well as the settlement notice—which

27

28   Case No.: 5:20-cv-05704-EJD
     ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
     GRANTING IN PART REQUEST FOR ATT'YS' FEES, COSTS, & SERV. AWARDS

United States District Court
Northern District of California

1    provided Class Counsel's contact information—the claim form, the Preliminary Approval Order, the

2    Settlement Agreement with exhibits, the SAC, and the toll-free number (866-274-4004) operated by

3    SCS to which Class Members can direct questions about the settlement.  Vieira Decl. ¶¶ 5–6.

4         Non-active Class members were given until November 10, 2023, to submit claim forms.  *Id.*

5    ¶ 12.  As of November 9, SCS had reportedly received 813 Former Participant Claim Forms, in

6    addition to the 12,676 Class Members with active accounts who will automatically receive the

7    benefit of the settlement.  Vieira Supp. Decl. ¶ 9.

8         All Class Members had until October 17, 2023 to postmark objections to the settlement.

9    Vieira Decl. ¶ 11.  To date, no Class Members objected to the settlement.  Vieira Supp. Decl. ¶ 8;

10   *see* Mot. at 5.

11   **II.    FINAL APPROVAL OF SETTLEMENT**

12        **A.    Legal Standard**

13        A court may approve a proposed class action settlement of a certified class only "after a

14   hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements

15   for class certification.  Fed. R. Civ. P. 23(e)(2).  In reviewing the proposed settlement, a court need

16   not address whether the settlement is ideal or the best outcome, but only whether the settlement is

17   fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class.  *See Hanlon v.*

18   *Chrysler Corp.*, 150 F.3d at 1027.  The *Hanlon* court identified the following factors relevant to

19   assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense,

20   complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

21   throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and

22   the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a

23   government participant; and (8) the reaction of class members to the proposed settlement.  *Id.* at

24   1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.

25   2004).

26        Furthermore, class settlements reached prior to formal class certification require a

27

28   Case No.: 5:20-cv-05704-EJD
     ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
     GRANTING IN PART REQUEST FOR ATT'YS' FEES, COSTS, & SERV. AWARDS

7

*United States District Court*
*Northern District of California*

"heightened fairness inquiry." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 783 (9th Cir. 2022) (quoting *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019)).  When reviewing such a pre-certification settlement, the district court must not only explore the Churchill factors but also "look[] for and scrutinize[] any subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Roes*, 944 F.3d at 1043 (internal quotation marks omitted).

> **B.     Discussion[2]**

>> **1.     The Settlement Class Meets the Prerequisites for Certification.**

As the Court found in its order granting preliminary approval and conditional certification of the settlement class herein, the prerequisites of Rule 23 have been satisfied for purposes of certification of the Settlement Class.  To restate the Court's findings:

- Numerosity: Pursuant to Rule 23(a)(1), the Settlement Class of over 17,000 individuals is so numerous that joinder of all members is impracticable.

- Commonality: Rule 23(a)(2) commonality requires "questions of fact or law common to the class." *Hanlon*, 150 F.3d at 1026.  Here, the interests of the Class Representatives and the nature of the alleged claims are consistent with those of the Settlement Class Members, and there appear to be no conflicts between or among the Class Representatives and the Settlement Class.

- Typicality: Rule 23(a)(3) requires that Plaintiffs show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."   Here, Plaintiffs allege that Defendants breached their fiduciary duties as to every Plan participant and that "they have all been injured in the same way," making Plaintiffs' claims typical of class members. *Foster v. Adams & Assocs., Inc.*, No. 18-CV-02723-

---

[2] The Court notes that the Parties provided the required notice to federal and state attorneys general under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b).  Decl. of Laurie Rubinow ISO Mot. for Final Approval of Class Action Settlement and Awards of Att'ys' Fees, Expenses, and Case Contribution Awards ("Rubinow Decl.") ¶ 22, ECF No. 148-1.  Notice occurred more than 90 days before the date of this order, as required by 28 U.S.C. § 1715(d).

Case No.: 5:20-cv-05704-EJD
ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART REQUEST FOR ATT'YS' FEES, COSTS, & SERV. AWARDS

United States District Court
Northern District of California

1    JSC, 2019 WL 4305538, at *4 (N.D. Cal. Sept. 11, 2019).

2    • Adequacy: With respect to Rule 23(a)(4), the Class Representatives and Class

3       Counsel have fairly and adequately represented the interests of the Class.  Class

4       Counsel have prosecuted the action vigorously on behalf of the class; they have

5       identified and investigated potential claims and are experienced in handling ERISA

6       class actions.  Furthermore, no conflicts of interest appear as between Plaintiffs and

7       the members of the Settlement Class.

8    • Finally, the Settlement Class further satisfies Rule 23(b)(1).  "Rule 23(b)(1)(A)

9       prevents the prosecution of separate actions that would create the risk of inconsistent

10      or varying adjudications . . . that would establish incompatible standards of conduct

11      for the party opposing the class."  *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948,

12      965 (9th Cir. 2016*), as amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016)

13      (quotations omitted).  "Certification under Rule 23(b)(1) is particularly appropriate in

14      cases involving ERISA fiduciaries who must apply uniform standards to a large

15      number of beneficiaries."  *Foster v. Adams & Assocs., Inc.*, No. 18-CV-02723-JSC,

16      2019 WL 4305538, at *7 (N.D. Cal. Sept. 11, 2019) (citation omitted).  Separate,

17      individual prosecutions of Plaintiffs' ERISA action would create a risk inconsistent or

18      varying adjudications as to individual Settlement Class Members and, as a practical

19      matter, would be dispositive of the interests of the other members not parties to the

20      individual adjudications, or substantially impair or impede the ability of such persons

21      to protect their interests.

22   *See* Prelim. Approval Order. ¶¶ 2(a)–(f).

23          **2.      Adequate Notice Was Provided.**

24          A court must "direct notice [of a proposed class settlement] in a reasonable manner to all

25   class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  The notice must

26   be "reasonably calculated, under all the circumstances, to apprise interested parties of the

27   Case No.: 5:20-cv-05704-EJD
28   ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
     GRANTING IN PART REQUEST FOR ATT'YS' FEES, COSTS, & SERV. AWARDS

United States District Court
Northern District of California

1   pendency of the action and afford them an opportunity to present their objections." *In re Apple*

2   *Device Performance*, 50 F.4th at 779.  However, "neither Rule 23 nor the Due Process Clause

3   requires actual notice to each individual class member." *Briseno v. ConAgra Foods, Inc.*, 844

4   F.3d 1121, 1128 (9th Cir. 2017).

5           On July 13, 2023, the Court approved the Notice Plan subject to certain revisions described

6   at the preliminary approval hearing on June 29, 2023.  *See* ECF Nos. 144, 145.  At the further

7   hearing on July 13, 2023, the Court approved the revised notice and found the parties' proposed

8   notice procedures provided the best notice practicable and reasonably calculated to apprise Class

9   members of the settlement and their rights to object or exclude themselves.  ECF Nos. 146, 147;

10  Prelim. Approval Order 6–7.

11          Pursuant to those procedures, SCS provided direct notice to 17,357 Class Members.  Vieira

12  Supp. Decl. ¶ 3.  The most recently filed declaration indicates that approximately 24 Class Members

13  with active and non-active accounts did not receive notice and/or a claim form because the

14  Settlement Administrator lacked a valid email address or home address for these individuals.  *See*

15  Vieira Supp. Decl. ¶¶ 4–5.  Only 10 Class Members with non-active accounts did not receive a

16  notice and claim form because they were returned as undeliverable.  Despite SCS's efforts, it was

17  unable to obtain an updated mailing addresses from the U.S. Postal Service or locate their updated

18  information by "skip-tracing." *Id.* ¶ 4.  In sum, SCS was able to provide notice to more than 99% of

19  the class.

20          Based upon the foregoing, the Court finds that the Settlement Class has been provided

21  adequate notice.

22                      **3.      The Settlement Is Fair, Reasonable, and Adequate.**

23          "Fed. R. Civ. P. 23(e) requires the district court to determine whether a proposed

24  settlement is fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938,

25  959 (9th Cir. 2003).  To determine whether a settlement satisfies Rule 23(e), a court must consider

26  the following "*Hanlon*" factors: "the strength of plaintiffs' case; the risk, expense, complexity, and

27

28  Case No.: 5:20-cv-05704-EJD
    ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
    GRANTING IN PART REQUEST FOR ATT'YS' FEES, COSTS, & SERV. AWARDS

*United States District Court*
*Northern District of California*

1   likely duration of further litigation; the risk of maintaining class action status throughout the trial;

2   the amount offered in settlement; the extent of discovery completed, and the stage of the

3   proceedings; the experience and views of counsel; the presence of a governmental participant; and

4   the reaction of the class members to the proposed settlement." *Id.* (quotations and citation

5   omitted).  As the Court previously found in its Preliminary Approval Order, the *Hanlon* factors

6   indicate the settlement here is fair and reasonable and treats class members equitably relative to

7   one another.  *See* Prelim. Approval Order. 3–4.

8          "The first and second [*Hanlon*] factors require the Court to consider the strength of the

9   Plaintiffs' case on the merits balanced against the amount offered in the settlement and the risks of

10   further litigation."  *Foster*, 2022 WL 425559, at *4 (quotations and citation omitted).  Although

11   Plaintiffs believe there is a strong legal and factual basis for their claims, they recognize the

12   inherent risks of continued litigation, particularly for complex ERISA claims.  Mot. 7.  Indeed,

13   "ERISA is an enormously complex statute, and many ERISA matters also involve facts that are

14   exceedingly complicated."  *Conkright v. Frommert*, 559 U.S. 506, 509 (2010) (quotation marks

15   omitted).  At the time the Parties reached settlement, motions to dismiss and certify the class were

16   pending which required substantial continued litigation.  Had plaintiffs prevailed, the Parties likely

17   would have filed additional dispositive, expert exclusion, and other pretrial motions, culminating

18   with a trial and potential appeal.  Mot. 8.  Moreover, the third factor looks to the risk of

19   maintaining the class certification if litigation were to proceed.  Since the Parties settled prior to a

20   certification ruling, there was a risk that a class would not be certified.  Even if Plaintiffs prevailed

21   on their certification motion, the Court cannot conclude that there would be no risk of

22   decertification.  Settlement avoids these risks to the benefit of the Class.  Thus, the first, second,

23   and third *Hanlon* factors favor final approval.

24          Fourth, the amount offered in settlement is within the range of reasonableness.  "[I]t is

25   well-settled law that a proposed settlement may be acceptable even though it amounts to only a

26   fraction of the potential recovery that might be available to the class members at trial."  *Nat'l*

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1  *Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004); *see*

2  *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 628 (9th Cir.

3  1982).  According to Plaintiff's calculations, the settlement provides monetary relief of

4  approximately 68%, of the midpoint, or $9,941,637.25, of the most likely range of losses from

5  $3,943,017 million to $15,940,213 million.  Mot. 9.  The Court agrees with Plaintiffs that this

6  recovery is in a range consistent with the median settlement recovery in class actions.

7      The fifth and sixth factors—the extent of discovery and the stage of the proceedings—also

8  favors final approval.  "[E]xtensive review of discovery materials indicates [Class Counsel] had

9  sufficient information to make an informed decision about the Settlement . . . . [which] favors

10 approving the Settlement."  *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab.*

11 *Litig.*, No. MDL 2672 CRB (JSC), 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016).  Here,

12 Plaintiffs have taken extensive discovery sufficient to enable counsel to evaluate the strength of

13 their claims and the risks of continued litigation.  Rubinow Decl. ¶ 3.  For example, Plaintiffs

14 received and reviewed thousands of pages of documents, deposed fact witnesses, and disclosed

15 expert reports.  *Id.*; Mot. 9–10.  At this stage in the litigation, Defendants' motion to dismiss the

16 SAC was briefed and pending the Court's ruling, and Plaintiff's had recently filed a class

17 certification motion before settlement was reached.  Plaintiffs aver that the Parties had exchanged

18 sufficient information at this juncture and conducted an independent analysis to determine their

19 likelihood of success on their claims.  Rubinow Decl. ¶ 3.  Thus, the Court concludes that the

20 settlement was reached "following sufficient discovery and genuine arms-length negotiation."

21 *DIRECTV, Inc.*, 221 F.R.D. at 528.

22     Next, the experience and views of counsel also favors granting final approval.  Class

23 Counsel has significant experience in class action litigation generally and, in particular, ERISA

24 breach of fiduciary duty litigation.  Mot. 10.  This Circuit recognizes that "[p]arties represented by

25 competent counsel are better positioned than courts to produce a settlement that fairly reflects each

26 party's expected outcome in litigation."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th

27 Case No.: 5:20-cv-05704-EJD

28 ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
GRANTING IN PART REQUEST FOR ATT'YS' FEES, COSTS, & SERV. AWARDS

1    Cir. 2009) (citation omitted).  Giving due "consideration to the opinion of competent counsel,"

2    and in consideration of the foregoing, the Court agrees with Class Counsel's endorsement that the

3    settlement is fair, adequate, and reasonable.  *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ,

4    2014 WL 2926210, at *5 (N.D. Cal. June 27, 2014) (quotations and citation omitted).

5         Finally, the reaction of Class Members has been overwhelmingly positive.  The Court

6    received no objections to the settlement, and this "absence of a negative reaction" certainly weighs

7    in favor of approval.  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal.

8    2010).

9         Furthermore, in its Preliminary Approval Order, the Court approved the proposed Plan of

10    Allocation.  Distribution plans are government by the same legal standards applied to final

11    approval of settlement.  *Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557-HSG, 2021 WL

12    5447008, at *11 (N.D. Cal. Nov. 22, 2021).  Pursuant to Plaintiffs' Allocation Plan, the amount

13    paid to each Class Member will be determined based on the average account balance of each Class

14    Member's account during the relevant period.  Mot. 3.  Specifically, each Class Member will

15    receive a "score" based on their account balance and they length of their investment to

16    approximate the damage suffered.  Plan of Allocation § 1.5.  Because the fund is distributed on

17    *pro rata* basis, the Court finds the Plan of Allocation to be fair and reasonable and to treat class

18    members equitably.

19         Lastly, Defendants retained an Independent Fiduciary, Gallagher Fiduciary Advisors, LLC,

20    to approve and authorize the Settlement on behalf of the Plan pursuant to Department of Labor

21    Regulations pertaining to the release of litigation claims on behalf of a qualified retirement plan.

22    *See* Settlement Agreement § 2.1; Mot. 5–6.  As reflected in the report, the Independent Fiduciary

23    concluded that the Settlement and related applications are fair, reasonable, and adequate.  *See*

24    Rubinow Supp. Decl. Ex. 1.

25              **1.    The *Bluetooth* Factors Are Satisfied.**

26         A settlement agreement negotiated before the class has been certified requires a "higher

27

28

*United States District Court*
*Northern District of California*

1   level of scrutiny" to ensure it is free from "collusion or other conflicts of interest." *Roes, 1-2*, 944

2   F.3d at 1048.  Often referred to as the "*Bluetooth* factors," the Court must determine whether the

3   settlement was a result of good faith, arms-length negotiations lacking any explicit collusion or

4   "subtle signs" of collusion.  *In re Bluetooth*, 654 F.3d at 947.  These subtle signs of collusion

5   include:

> (1) when counsel receive a disproportionate distribution of the
> settlement; (2) when the parties negotiate a clear sailing arrangement
> (i.e., an arrangement where defendant will not object to a certain fee
> request by class counsel); and (3) when the parties create a reverter
> that returns unclaimed [funds] to the defendant.

9   *Id.* at 1049 (quotations and citations omitted).

10        None of these warning signs are present here.  First, the Settlement Agreement provides

11  that Class Counsel shall not seek more than 30% of the Qualified Settlement Fund to ensure Class

12  Counsel does not seek a disproportionate share of the fund.  *See* Settlement Agreement § 6.1.

13  Second, the Settlement Agreement does not include a free sailing agreement.  Although

14  Defendants have not objected to Plaintiff's requested fee award, nothing in the Settlement

15  Agreement prevents Defendants from doing so.  Finally, the fund is non-reversionary.

16                    **2.    Certification Is Granted and the Settlement Is Approved.**

17        After reviewing all of the required factors, the Court finds the Settlement Agreement to be

18  fair, reasonable, and adequate, and certification of the Settlement Class to be proper.

19  **III.    ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS**

20        Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of

21  Civil Procedure 23(h).  Such fees must be found "fair, reasonable, and adequate" in order to be

22  approved.  Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  To "avoid

23  abdicating its responsibility to review the agreement for the protection of the class, a district court

24  must carefully assess the reasonableness of a fee amount spelled out in a class action settlement

25  agreement." *Id.* at 963.  "[T]he members of the class retain an interest in assuring that the fees to be

26  paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator

27  that the class has obtained less monetary or injunctive relief than they might otherwise.  *Id.* at 964.

United States District Court
Northern District of California

**A.**     **Attorneys' Fees**

The Court analyzes an attorneys' fee request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  The Ninth Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward."  *In re Bluetooth*, 654 F.3d at 944–45 (citing *Vizcaino,* 290 F.3d at 1050–51).

**1.**     **Percentage-of-the-Fund**

Class counsel requests an attorneys' fee award of one-third of the $6,750,000 Settlement Fund, or $2,250,000.  Defendants do not oppose the fee request.

When using the percentage-of-recovery method, courts consider a number of factors, including whether class counsel "'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino*, 290 F.3d at 1047-50.  Of these considerations, "the most critical factor is the degree of success obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  Under the percentage-of-the-fund method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."  *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors."  *Six (6) Mexican Workers*, 904 F.2d at 1311.

Using the percentage-of-the-fund method, the Court finds the attorneys' fees sought to be reasonable.  First, Class Counsel achieved "exceptional results" for the class.  Plaintiffs estimate

United States District Court
Northern District of California

1    the average range of realistic and supportable damages is $3,943,017 million to $15,940,213

2    million depending upon the methodology.  Mot. 12.  Based on this range, the Settlement would

3    provide a recovery of 68% of the midpoint.  *Id.*  This is a particularly favorable result for an

4    ERISA litigation.  *Cf., e.g.*, *Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794 AB (JCX),

5    2020 WL 5668935, at *2 (C.D. Cal. Sept. 18, 2020) (the $12.375 million settlement fund

6    represents approximately 29% of Plaintiffs' claimed damages at trial); *Emmons v. Quest*

7    *Diagnostics Clinical Lab'ys, Inc.*, No. 1:13-CV-00474-DAD-BAM, 2017 WL 749018, at *5 (E.D.

8    Cal. Feb. 27, 2017) ($2.35 million settlement; 27.6% of claimed damages of $8.5 million); *Cheng*

9    *Jiangchen v. Rentech, Inc.*, No. 17-1490-GW, 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019)

10   ($2.05 million settlement; 10% of maximum damages of $20 million).  Thus, this factor strongly

11   favors the requested upward departure from the benchmark.

12        Second, the risk of litigation favors an upward departure.  Courts in the Ninth Circuit have

13   acknowledged that "ERISA 401(k) litigation is risky and even had Plaintiffs prevailed on the

14   merits, there would be significant uncertainty as to a damage award following trial."  *Urakhchin v.*

15   *Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-CV-01614-JLS-JCG, 2018 WL 8334858, at *6 (C.D.

16   Cal. July 30, 2018).  Third, Class Counsel are highly experienced in prosecuting ERISA actions,

17   which weighs in favor of the requested fee award.  For example, Miller Shah has recovered more

18   than $1 billion on behalf of their clients in ERISA actions.  Rubinow Decl. ¶ 15.  Fourth, the

19   contingent nature of representation in this case—in combination with the aforementioned

20   factors—supports an award of attorneys' fees above the benchmark.  *See Marshall v. Northrop*

21   *Grumman Corp.*, No. 16-CV-6794 AB (JCX), 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18,

22   2020).  Class Counsel spent more than 3,500 hours over three years prosecuting this action with

23   the knowledge that they would have to pay overhead and the possibility of no recovery.  Mot. 14;

24   Rubinow Decl. ¶ 19.

25        Finally, although the requested fee award is above the Ninth Circuit's benchmark for class

26   actions, awards in similar ERISA cases support Class Counsel's request for one-third of the fund.

27

28

United States District Court
Northern District of California

1  Indeed, as noted by Judge Corley, "a 33.3% recovery is on par with settlements in other complex

2  ERISA class actions." *Foster v. Adams & Assocs., Inc.*, No. 18-CV-02723-JSC, 2022 WL

3  425559, at *10 (N.D. Cal. Feb. 11, 2022) (collecting cases).  And significantly, the lack of any

4  objections to the fee request also supports Class Counsels' fee request.  *Foster*, 2022 WL 425559,

5  at *10; *Waldbuesser v. Northrop Grumman Corp.*, No. CV 06-6213-AB (JCX), 2017 WL

6  9614818, at *5 (C.D. Cal. Oct. 24, 2017) ("The presence or absence of objections from the class is

7  also a factor in determining the proper fee award.").

8  　　　Accordingly, the Court finds that Class Counsel's fee request of $2,250,000 is supported

9  by the *Vizcaino* factors.

10  　　　　　　**2.　　Lodestar Cross-Check**

11  　　　The Court has also considered a cross-check using the lodestar method.  Under the lodestar

12  approach, a court multiplies the number of hours reasonably expended by the reasonable hourly

13  rate.  *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016).  "A reasonable hourly rate is

14  ordinarily the 'prevailing market rate [] in the relevant community.'"  *Id.* (quoting *Perdue v.*

15  *Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)).

16  　　　Here, the lodestar figure is $1,841,533.50 across 3,552 hours.  Rubinow Decl. ¶ 13.  The

17  lodestar multiplier is 1.22.  *Id.*  This multiplier is within the range of modest multipliers accepted

18  and approved in this Circuit.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D.

19  Cal. 2008) (approving fee award that represented lodestar multiplier of 1.33).

20  　　　The Court finds that the hours claimed were reasonably incurred and that the rates charged

21  are reasonable and commensurate with those charged by attorneys with similar experience in the

22  market.  Miller Shah billed at hourly rates ranging from $250 for paralegals, $375 to $550 for

23  associate attorneys, and $750 to $1,100 for partners.  Rubinow Decl., Ex. A.  Capozzi and Adler

24  billed at the following hourly rates: $350 for paralegals, $550 for associates, and $855 for

25  partners.  *Id.*  The sole attorney from Rosman and Germain billed at a rate of $695 per hour.

26  These rates are on par with the prevailing market rates in the district for ERISA litigators.  *See,*

27

28

1    *e.g.*, *Foster* 2022 WL 425559, at \*9 (approving billing ranges from $265 to $975 across three

2    firms); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-CV-03698-NC, 2018 WL 2183253, at

3    \*7 (N.D. Cal. May 11, 2018) (approving billing rates ranging from $600 to $875 per hour for

4    attorneys with more than 10 years of experience, $325 to $575 per hour for attorneys with 10 years

5    or less experience, and $250 per hour for paralegals).  Moreover, the 3,552 hours spent

6    prosecuting this case were reasonable given the amount of work.

7         Accordingly, using both the percentage-of-the-fund and the lodestar method as a cross-

8    check, the Court finds the attorneys' fees sought to be reasonable.

9        **B.**     **Costs Award**

10        Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses.  Fed. R.

11    Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may

12    recover reasonable expenses that would typically be billed to paying clients in non-contingency

13    matters).  Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by

14    law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Here, Class Counsel seeks

15    reimbursement for litigation expenses, and provides records documenting those expenses, in the

16    amount of $119,386.02.  *See* Rubinow Decl., Ex. B.  Notably, Class Counsel does not seek

17    reimbursement of any travel expenses incurred in connection with its representation of the

18    Settlement Class, despite incurring such expenses in the course of this litigation.  *Id.* ¶ 9.

19    Accordingly, the Court finds the requested amount reasonable, fair, and adequate.

20        **C.**     **Service Awards**

21        Class Counsel requests service awards of $12,500 each for Class Representatives Bailey,

22    Hayes, and Robinson.

23        "It is well-established in this circuit that named plaintiffs in a class action are eligible for

24    reasonable incentive payments, also known as service awards."  *Wren v. RGIS Inventory*

25    *Specialists*, No. 06-cv-05778 JCS, 2011 WL 1230826, at \*31 (N.D. Cal. Apr. 1, 2011),

26    *supplemented*, No. 06-cv-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).  To determine

27

28    Case No.: 5:20-cv-05704-EJD
     ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
     GRANTING IN PART REQUEST FOR ATT'YS' FEES, COSTS, & SERV. AWARDS

United States District Court
Northern District of California

1    the amount of the service award, the district court must evaluate named plaintiff's requested award

2    using relevant factors including "the actions the plaintiff has taken to protect the interests of the

3    class, the degree to which the class has benefitted from those actions . . . [and] the amount of time

4    and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such

5    awards are discretionary . . . and are intended to compensate class representatives for work done

6    on behalf of the class, to make up for financial or reputational risk undertaken in bringing the

7    action, and, sometimes, to recognize their willingness to act as a private attorney general."

8    *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The "presumptively

9    reasonable" service award in this district is $5,000. *Bellinghausen v. Tractor Supply Co.*, 306

10   F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases and explaining that $5,000 incentive award is

11   presumptively reasonable and that awards typically range from $2,000–$10,000).

12        During the Final Fairness hearing, Class Counsel reported that Bailey, Hayes, and

13   Robinson were very active throughout the case and dedicated close to 100 hours each in litigating

14   this action. Although the action settled before they were scheduled to be deposed, Class Counsel

15   indicated that Bailey, Hayes, and Robinson had thoroughly prepared for their depositions and had

16   attended mediation. When considered in the context with the total Settlement Amount and the

17   significant time and effort the Class Representatives expended on the litigation for the benefit of

18   the class, a service award greater than the "presumptively reasonable" $5,000 award is

19   appropriate, although the Court is unpersuaded that awards of $12,500 are justified in this action.

20   Thus, the Court approves an incentive award payment of $6,500 to each Class Representative.

21   **IV.    CONCLUSION**

22        Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**.

23   The request for attorneys' fees, costs, and service awards is **GRANTED IN PART** as follows: Class

24   Counsel is awarded $2,250,000 in attorneys' fees and $119,386.02 in litigation costs, and Class

25   Representatives Bailey, Hayes, and Robinson are granted an incentive award of $6,500 each.

26

27   Case No.: 5:20-cv-05704-EJD

28   ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
     GRANTING IN PART REQUEST FOR ATT'YS' FEES, COSTS, & SERV. AWARDS

United States District Court
Northern District of California

1    Without affecting the finality of this order in any way, the Court retains jurisdiction of all

2    matters relating to the interpretation, administration, implementation, effectuation and enforcement

3    of this order and the Settlement.

4    The parties shall file a post-distribution accounting in accordance with this District's

5    Procedural Guidance for Class Action Settlements on or before **February 2, 2025**.

6    **IT IS SO ORDERED.**

7    Dated: December 13, 2023

8

9    _____

10   EDWARD J. DAVILA
     United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California